IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

LATAYA ANDERSON )
)
v. ) No. 3:20-0114
)
ANDREW M. SAUL )
Commissioner of Social Security )

**To:** **The Honorable Aleta A. Trauger, District Judge**

**REPORT AND RECOMMENDATION**

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff's claim for Supplemental Security Income ("SSI") as provided under Title XVI of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry ("DE") 19), to which Defendant has filed a response. (DE 21.) Plaintiff has also filed a reply to Defendant's response. (DE 22.) This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a Report and Recommendation. (DE 4.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (DE 19) be **GRANTED,** the decision of the Commissioner be **REVERSED**, and this matter be **REMANDED** for further administrative proceedings consistent with this opinion.

## I. INTRODUCTION

Plaintiff filed an application for SSI on November 8, 2016. (Transcript of the Administrative Record (DE 13) at 90.)[1] She alleged a disability onset date of December 16, 2015 and asserted that she was unable to work because of bipolar disorder, anxiety, attention deficit hyperactivity disorder ("ADHD"), and pain in the back, knees, and left arm. (AR 90-91.) Plaintiff's application was denied initially and upon reconsideration. (AR 90, 109.) Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Robert Martin on October 24, 2018. (AR 32.) The ALJ denied the claim on March 20, 2019. (AR 12-14.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision on December 9, 2019 (AR 1-3), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ's unfavorable decision included the following enumerated findings based upon the record:

1. The claimant has not engaged in substantial gainful activity since November 8, 2016, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, dysfunction of major joints, depressive disorder, anxiety disorder and personality disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

---

[1] The Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in the large black Bates stamps on the bottom right corner of each page.

2

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a). She can lift, carry, push, and pull 10 pounds frequently and 10 pounds occasionally, sit 6 hours in an 8-hour workday, and stand/walk 2 hours in an 8-hour workday. She is limited to occasional postural activities except she can never climb ladders, ropes, or scaffolds. She should avoid concentrated exposure to work around hazardous machinery, moving parts, vibrations, and work at unprotected heights. She is limited to simple, routine, repetitive tasks and simple work-related decisions. She can interact occasionally with supervisors and co-workers, but no interaction with the general public. She can adapt to occasional changes in the workplace. She can maintain concentration, persistence, and pace for such tasks with normal breaks spread throughout the day.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on April 12, 1980 and was 36 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since November 8, 2016, the date the application was filed (20 CFR 416.920(g)).

(AR 17-27.)

### III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

The ALJ utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. § 416.920(a)(4). At step one, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought; at step two, the ALJ considers whether one or more of the claimant's alleged impairments are "severe" in nature; at step three, the ALJ determines whether the impairments at issue meet or equal one of the Listings contained in the

4

regulatory List of Impairments; at step four, the ALJ considers the claimant's residual functional capacity ("RFC") and determines whether the claimant can still perform past relevant work; at step five, the burden of proof shifts to the ALJ to assess whether the claimant, after establishing that past relevant work is no longer possible, is capable of performing other types of work. *Id*.

If the ALJ determines at step four that the claimant can perform past relevant work, the claimant is "not disabled" and the ALJ need not complete the remaining steps of the sequential analysis. *Id*. § 416.920(a)(4)(iv). "Past relevant work" is defined as "substantial gainful activity" that a claimant has done within the past 15 years and that lasted long enough for the claimant to learn to do it. *Id.* § 416.960(b)(1). If the claimant is unable to perform past relevant work, however, the ALJ proceeds to step five to determine whether, in light of the claimant's RFC, age, education, and work experience, the claimant can perform other substantial gainful employment and whether such employment exists in significant numbers in the national economy. *Id*. § 416.920(a)(4)(v). In evaluating a claimant's RFC, the ALJ must consider the combined effect of all of the claimant's impairments, mental and physical, severe and nonsevere. 42 U.S.C. § 423(d)(2)(B), (5)(B).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citing *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001)). The Court is required to accept the ALJ's explicit findings and ultimate determination unless the record as a whole is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing 42 U.S.C. § 405(g)).

### B. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved the Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps, but found at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff had no past relevant work. At step five, the ALJ determined that Plaintiff's RFC allowed her to perform sedentary work with express limitations to account for her severe impairments, and that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 17-27.)

### C. Plaintiff's Assertion of Error

Plaintiff presents a single assertion of error in her motion, specifically that the ALJ erred at step five of the evaluation by concluding that a significant number of jobs existed that Plaintiff can perform in the national economy. (DE 20 at 2.) Plaintiff therefore requests that this case be reversed and/or remanded pursuant to sentence four of 42 U.S.C. § 405(g) for additional consideration. (*Id*. at 13.)

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record

6

adequately establishes a claimant's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

### 1. Step Five Finding.

Plaintiff's single assertion of error involves the ALJ's step five finding that Plaintiff's RFC would allow her to perform certain jobs available in significant numbers in the national economy. At step five, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The ALJ in this case attempted to meet this burden by eliciting testimony from a vocational expert ("VE") during the administrative hearing (AR 66-73), as is permitted. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (noting that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question" regarding a claimant's ability to perform specific jobs). Based on the VE's testimony, the ALJ concluded that Plaintiff could perform three jobs designated by the Dictionary of Occupational Titles ("DOT") as "assembler," "finisher," and "final assembler." (AR 26-27.) In his opinion, the ALJ referred to the VE's supposed testimony that 24,932 of each one of these jobs was available in the national economy. (AR 27.)

However, Plaintiff correctly notes that the VE's testimony regarding these three occupations was rather ambiguous. The ALJ asked the VE to consider a hypothetical person with the same age, education, and lack of relevant work experience as Plaintiff who could perform a range of sedentary work but would be subject to additional mental restrictions that included, among others: "simple, routine repetitive tasks" and "simple[] work-related decisions," occasional interactions with supervisors and coworkers, the ability to adapt to occasional changes in the

7

workplace, and the ability to maintain concentration, persistence, and pace with normal breaks throughout the workday. (AR 66-67.) Additionally, and critical to the instant matter, the ALJ indicated that the hypothetical individual would be limited to "no interaction with the general public." (AR 67.) In response to the ALJ's question, the VE stated the following:

> I can give you three jobs with the caveat that these three jobs will all be obviously sedentary with [a specific vocational preparation level] of two. But all three will have the same amount of -- the same numbers. And the reason that they have the same number is that of this [sic] sedentary unskilled jobs that exist, these -- this is the total amount for those jobs. And this is divided between 75 current unskilled positions at the sedentary level … And they are as follows: assembler, [DOT number] 734.687-018, 24,932; finisher, [DOT number] 731.687-014, sedentary, as I indicated, with [a specific vocational preparation level] of two, 24,932; and final, assembler, [DOT number] 713.687-018. Again, sedentary, [specific vocational preparation level] of two, 24,932.

(AR 67.) Following this vague testimony, counsel for Plaintiff pressed the VE about the practical meaning of the numbers he provided:

> [Counsel]: [Y]ou said 75 jobs are dividing up the 24,932 total?
>
> [VE]: That's correct … The U.S. Department of Labor will not break them down by DOT numbers. They break them down by census code.
>
> [Counsel]: Okay.
>
> [VE]: And that is the total amount of jobs that exist. And the three jobs that I gave you are still viable jobs within that classification of production workers.
>
> [Counsel]: Okay. But we just don't know how many of those specific jobs are available?
>
> [VE]: No.

(AR 69.) The ALJ then interjected to ask the VE whether there would be "at least 24,000" jobs available, to which the VE responded: "Well, what [counsel] said was for those particular numbers, I cannot tell you the exact amount. But there are 24,000 jobs in the totality of production workers." (AR 69.) The VE then reiterated that the 24,000 number represented the total availability of the

8

75 different "current unskilled positions at the sedentary level" he had previously referenced. (AR 67, 70.)

Plaintiff argues that this testimony does not represent substantial evidence in support of the ALJ's step five finding because the VE failed to specify how many jobs would be available for each of the three occupations identified. Plaintiff therefore claims that the ALJ's reliance on such testimony represents reversible error and warrants remand for additional consideration of Plaintiff's application.

The Sixth Circuit has held that there is no "magic number in evaluating whether a job exists in significant numbers." *Doran v. Comm'r of Soc. Sec.*, 467 F. App'x 446, 449 (6th Cir. 2012) (citing *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)) (internal quotations omitted). The determination of whether a particular number is "significant" for purposes of step five is instead rooted in "common sense" and made on a case-by-case basis. *Id*. Based on a review of the VE's testimony and the ALJ's corollary conclusions, the Court concludes that the ALJ's step five finding is not supported by substantial evidence.

First, it cannot be reasonably disputed that the ALJ's opinion misconstrues the VE's testimony by indicating that *each* of the three occupations in question – assembler, finisher, and final assembler – furnishes 24,932 jobs in the national economy. (AR 27.) The VE instead testified that there were 24,932 jobs that represented the "total amount … of *production workers*" (AR 69) (emphasis added), which appears to denote a much larger pool of jobs than would be available to someone with Plaintiff's specific RFC. Indeed, the VE elsewhere described this 24,932 number as the total number of "sedentary unskilled jobs" (AR 67),[2] which covers only two broad categories:

---

[2] It is perhaps possible to interpret this statement as an attempt to convey that 24,932 in fact represents the total number of assembler, finisher, and final assembler jobs available to Plaintiff. (*See* AR 67) ("And the reason that they have the same number is that of this [sic] sedentary unskilled jobs that exist, these -- this is the total amount *for those jobs*.") (emphasis

9

"work [involving] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools," 20 C.F.R. § 404.1567(a) (definition of "sedentary work"), and "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a) (definition of "unskilled work").

Further, this does not account for the additional limitations included as part of the hypothetical and the assigned RFC, namely mental restrictions, which would further erode the available job market. (AR 19, 67.) Notably, the VE admitted as much during the administrative hearing. After identifying the three positions Plaintiff could purportedly perform despite her functional limitations (assembler, finisher, and final assembler), the VE made the following proclamation: "The other jobs that I could enumerate to you, your honor, I am unable to do so based on the fact that you indicated no public contact." (AR 68.) The VE thus seems to indicate that, based on Plaintiff's restriction to "no interaction with the general public" – which, again, is part of the formulated RFC (AR 19) – Plaintiff could *not* perform the duties of any of the remaining 72 occupations included in the VE's 24,932 figure. Crucially, there is no explanation in the administrative opinion regarding how much this would reduce the number of jobs available to Plaintiff. *See Springer v. Comm'r of Soc. Sec.*, 451 F. Supp. 3d 744, 766 (E.D. Mich. 2020) ("Where an ALJ relies upon a VE's testimony, the ALJ must build an accurate and logical bridge from [that] evidence to [the ALJ's] conclusion to afford a reviewing court the opportunity to provide the claimant with meaningful judicial review.") (internal citation omitted).

---

added). However, the VE's very next statement, "this [24,932 number] is divided between 75 current unskilled positions at the sedentary level" (AR 67), undermines such an interpretation by suggesting that there are instead 75 different jobs within this 24,932 amount that are suitable for someone with Plaintiff's physical limitations, three of which include assembler, finisher, and final assembler. At a minimum, this exchange underscores the muddled nature of the VE's testimony.

10

Moreover, even if the 24,932 number is accurate – notwithstanding the uncertainty discussed above and the VE's concession that the figure reflects broad job categories based only on "census code" (AR 69) – the VE testified that a true representation of job availability would require that the 24,932 jobs be "divided" by the narrower category of 75 "unskilled positions at the sedentary level." (AR 67.) Simple arithmetic transforms this 24,932 number into an average of 332.43 jobs per unskilled position at the sedentary level. And once the VE's statement that an inability to interact with the public would preclude performance of the other 72 unskilled and sedentary positions is factored into the calculations, a total of just 997.29 jobs (332.43 multiplied by the 3 named positions), on average, would be available to Plaintiff. Such a figure hardly provides substantial evidence that a significant number of viable jobs exist in the national economy. *Cf. Hall*, 837 F.2d at 275 (holding that 1,350 jobs available "in the local economy" established the existence of work in significant numbers "in the context of this case only"); *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006) ("870 jobs can constitute a significant number *in the geographic region*.") (emphasis added); *Waters v. Sec'y of Health & Human Servs.,* 827 F. Supp. 446, 448-450 (W.D. Mich. 1992) (1,000 jobs in state of Michigan not a significant number).[3]

Finally, even accepting the dubious proposition that 997 jobs in the national economy is sufficient to support the ALJ's step five finding, the Court cannot endorse the VE's tortured computation of job availability. At least one other circuit has flagged the inequitable results produced by the methods employed by the VE here:

---

[3] The Court necessarily assumes that the 24,932 figure was intended to reflect jobs available in the national economy based on Defendant's characterization (DE 21 at 5) as the VE failed to provide any such specificity. The Court also notes that the ALJ confusingly asserted that "assembler" and "final assembler" each yielded 24,932 jobs "in the US economy," but provided no such particularity with respect to "finisher." (AR 27.)

11

> One problem … is that the only reliable statistics on number of jobs are census data of broad job categories, rather than data on the number of jobs in the narrower categories of jobs that the applicant for benefits could actually perform. Typically … the vocational expert simply divides the census estimate of the number of jobs in the broad category that includes the narrow category of jobs that the applicant can perform, by the total number of narrow categories in the broad category. The assumption is thus that every narrow category has the same number of jobs as every other narrow category within the broad category—a preposterous assumption.

*Hill v. Colvin*, 807 F.3d 862, 870 (7th Cir. 2015) (Posner, J., concurring). This certainly appears to reflect the VE's actions in this case based on his explanation that the 24,932 total would have to be "divided" by 75 different jobs. (AR 69.) Admittedly other circuits have discounted Judge Posner's criticisms of the typical VE's methodology.[4] Still, the VE in this case testified unequivocally that he did not know how many viable jobs were available to Plaintiff. (AR 69.) And that testimony is fatal to the ALJ's decision. *See Jones v. Berryhill*, 392 F. Supp. 3d 831, 844 (M.D. Tenn. 2019) (noting that at step five the Commissioner "must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs").

Defendant's argument in support of the ALJ's decision is unavailing for multiple reasons. First, Defendant's brief misrepresents the actual substance of the VE's testimony, although such confusion is perhaps understandable in this case. Defendant initially contends that the VE "testified that there were 24,932 positions *for each job*" (DE 21 at 5) (emphasis added), ostensibly a reference to the assembler, finisher, and final assembler jobs. Defendant then states that the VE actually testified that there were "24,932 assembler, finisher, and final assembler positions in the national economy." (*Id.*) Neither assertion is accurate, of course, as the VE in fact testified that 24,932 total "production worker" positions existed in some unspecified economy and that these

---

[4] *See Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 449 (2d Cir. 2012) (noting that the Seventh Circuit's standard requiring that the ALJ probe the VE regarding his or her data source "has not been a popular export").

12

positions would need to be divided among 75 different sedentary, unskilled jobs to yield an accurate accounting. (AR 69.) The Court reiterates that the VE explicitly stated that he did not know how many of the assembler, finisher, and final assembler positions were available. (AR 69.) The 24,932 number is therefore meaningless, as is Defendant's reliance on it.

Second, Defendant cites to a series of opinions that are immaterial to the instant case. Defendant highlights the Sixth Circuit's decision in *Biestek v. Comm'r of Soc. Sec.*, in which the court held that a VE's testimony need not include an explanation of the data underlying his or her opinion regarding job availability to constitute substantial evidence in support of an ALJ's step five finding. *See* 880 F.3d 778, 790 (6th Cir. 2017), *aff'd sub nom. Biestek v. Berryhill*, 139 S. Ct. 1148 (2019). The primary issue with the ALJ's decision in the instant case, however, is not the data on which the VE relied but rather the complete absence of clarity in the VE's testimony on which the ALJ based his step five finding, which is adequately illustrated by the inability of either the ALJ or Defendant to accurately recite the VE's job numbers. Such ambiguity suggests that the VE's opinion was "conjured out of whole cloth" and therefore cannot be considered substantial evidence. *Id.* (quoting *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002)).

Defendant also contends that the ALJ's findings are "consistent with this district's precedent," relying on five cases in which this Court affirmed the Commissioner's denial of benefits based on a step five finding involving two of the same jobs at issue in the instant matter: "finisher" and "assembler." (DE 21 at 6-7.) Yet none of those decisions involved a claimant limited to no interaction with the general public. *See James v. Berryhill*, No. 2:15-cv-0052, 2018 WL 1035825, at *1 (M.D. Tenn. Feb. 23, 2018) (claimant limited to "occasional" interaction with the public); *Bishop v. Berryhill*, No. 3:13-cv-0956, 2017 WL 3912982, at *2 (M.D. Tenn. Sept. 7, 2017) (same); *Smith v. Berryhill*, No. 3:13-cv-0081, 2017 WL 1196519, at *2 (M.D. Tenn.

13

Mar. 31, 2017) (same); *Wisdom v. Colvin*, No. 3:11-1099, 2014 WL 2589415, at *8 (M.D. Tenn. June 10, 2014), *report and recommendation adopted,* 2014 WL 3362252 (M.D. Tenn. July 8, 2014) (claimant can "interact appropriately with the general public"); *Van Winkle v. Astrue*, No. 3:11-cv-1017, 2012 WL 4857815, at *1 (M.D. Tenn. Oct. 12, 2012), *report and recommendation adopted*, 2012 WL 5907290 (M.D. Tenn. Nov. 26, 2012) (claimant not subject to any restrictions regarding interaction with the public). Here, as previously discussed, the VE testified that the inability to have contact with the general public would decimate the already questionable total job numbers. (AR 67-68.) Given the VE's failure to explain his proffered job numbers in any detail, the cases upon which Defendant relies do little to bolster the ALJ's step five finding.

In summary, there is nothing in the record to suggest that the 24,932 figure quoted by the VE is a meaningful approximation of the number of jobs available to Plaintiff based on her physical and mental limitations. The VE diluted this quantity by stating that it needed to be "divided" among 75 different positions, only three of which would be feasible for Plaintiff. (AR 67.) The VE then conceded that he was unaware how many of these three positions actually exist in the local, regional, or national economy. (AR 69.) This fails to satisfy the Commissioner's burden at step five to "demonstrate the existence of jobs that the claimant can perform," *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987), and prevents the Court from determining whether substantial evidence supports the ALJ's ultimate decision. *See Moyers v. Colvin*, No. 3:13-cv-0959, 2015 WL 1013992, at *21 (M.D. Tenn. Mar. 9, 2015), *report and recommendation adopted*, 2015 WL 1467178 (M.D. Tenn. Mar. 30, 2015) ("[I]n order for a court to perform meaningful review of the Commissioner's decision, there must be some basis in the record for the number of jobs that the VE testified the plaintiff can perform."). The Court therefore

14

finds considerable merit in Plaintiff's assertion of error and recommends that this case be remanded for additional consideration.

## V. RECOMMENDATION

For all these reasons, it is respectfully RECOMMENDED that Plaintiff's motion for judgment on the administrative record (DE 19) be GRANTED and the Commissioner's decision be REVERSED and REMANDED for further consideration.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (*en banc*). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge

!